IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MANDI CALKINS, | 07-CV-6146-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**ALAN STUART GRAF**
P.O. Box 98
Summertown, TN 38483
(931) 964-3123

       Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney's Office
**BRITANNIA I. HOBBS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1053

1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-3621

       Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Mandi Calkins seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Plaintiff seeks an order reversing the decision of the Commissioner and remanding this action for an award of benefits.

    This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

    Plaintiff filed an application for DIB on April 16, 2003, alleging a disability onset date of November 11, 2001. Tr. 15.[1]

---

[1] Citations to the official transcript of record filed by the Commissioner on January 9, 2008, are referred to as "Tr."

The application was denied initially and on reconsideration. Tr. 37, 40.  An Administrative Law Judge (ALJ) held a hearing on June 7, 2005.  Tr. 462-523.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff, a lay witness, and a vocational expert (VE) testified.  The ALJ issued a decision on December 8, 2005, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 15-25.  The Appeals Council denied Plaintiff's request for review.  Tr. 6-9.  On December 8, 2005, therefore, the ALJ's decision became the final decision of the Commissioner.

## BACKGROUND

Plaintiff was born on February 21, 1962, and was 43 years old at the time of the hearing.  Tr. 37.  Plaintiff completed her GED and attended a few college classes.  Tr. 468.  Plaintiff has past work experience as a putty patcher, maid, phlebotomist, store manager, office manager, caregiver, secretary, janitor, saw tender, green chain worker, veneer company off-bearer, and shipping/receiving clerk.  Tr. 16, 97.

Plaintiff alleges disability due to a combination of various spinal problems including a cervical fusion and herniated discs and required use of an internal spinal-cord stimulator. Tr. 16.

Except when noted, Plaintiff does not challenge the ALJ's

3   -   OPINION AND ORDER

summary of the medical evidence.  Plaintiff, however, contends the ALJ erred by improperly rejecting (1) Plaintiff's testimony; (2) the opinions of Herbert F. Shellman, Ph.D., examining psychologist; (3) the opinion of Peter Kosek, M.D, treating physician; and (4) the opinions of Disability Determination Services (DDS)[2] doctors.

After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 17-20.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision

---

[2] Disability Determination Services is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson*, 359 F.3d at 1193. "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins*, 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

5   -   OPINION AND ORDER

2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's RFC.  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec.

6   -   OPINION AND ORDER

Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the

Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ noted the record contains "uncertainties and inconsistencies" as to Plaintiff's earnings during the relevant period.  The ALJ concluded, however, he did not need to decide whether any of Plaintiff's work activity after the alleged disability onset date qualified as substantial gainful activity because he could decide this matter on other grounds. Tr. 17.

At Step Two, the ALJ found Plaintiff has severe physical impairments of "spinal conditions post C5-seven fusion" and severe psychological impairments of depression and/or dysthymia. Tr. 24.

At Step Three, the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  When the ALJ assessed Plaintiff's RFC, he found Plaintiff retained the RFC to perform a reduced range of light exertional activities.  The ALJ found Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour day, and stand or walk for six hours in an eight-hour day.  Tr. 24.  The

8   -   OPINION AND ORDER

ALJ further found Plaintiff could climb, stoop, and reach overhead occasionally.  The ALJ found Plaintiff should avoid sitting in static positions that would require her to turn her neck to extremes of the right or left.  Finally, the ALJ found Plaintiff is limited to simple, repetitive tasks and should not work with the general public.  Tr. 24.

At Step Four, the ALJ found Plaintiff could perform her past relevant work as a shipping/receiving clerk.  Tr. 24.

At Step Five, the ALJ also found Plaintiff is capable of working in occupations that exist in significant numbers in the local and national economies.  Tr. 25.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 25.

## DISCUSSION

As noted, Plaintiff contends the ALJ erred by improperly rejecting (1) Plaintiff's testimony; (2) the opinions of Herbert F. Shellman, Ph.D., examining psychologist; (3) the opinion of Peter Kosek, M.D, treating physician; and (4) the opinions of DDS doctors.

**I.   The ALJ did not err when he rejected Plaintiff's testimony**.

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen,* the Ninth Circuit established two

9   -   OPINION AND ORDER

requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ noted Plaintiff's allegations of pain were disproportionate to the objective findings in the medical record.  For example, the ALJ noted although Plaintiff reported bilateral upper-extremity pain, a March 7, 2003, EMG of both upper extremities did not show any evidence of cervical radiculopathy or denervating radiculopathy.  Tr. 20, 389.  Similarly, a March 7, 2003, nerve conduction study conducted by Alexandre J.

10 -   OPINION AND ORDER

Lockfeld, M.D., examining physician, showed "minimal" right median neuropathy "consistent with carpal tunnel syndrome." Tr. 389.  Dr. Lockfeld, however, opined "it seems unlikely that this would be responsible for [Plaintiff's] severe symptoms." Tr. 20, 389.  The ALJ also noted a March 17, 2003, CT scan of Plaintiff's cervical spine showed only mild symptoms.  Tr. 20, 386-87.

    The ALJ pointed out that Plaintiff denied any history of alcohol or drug use during her treatment by Dr. Kosek, but she reported to the emergency room on June 3, 2003, with a drug and alcohol overdose.  Tr. 202.  During her admission, Plaintiff reported a history of alcohol abuse "to end pain and to pass out" that caused her to drink entire bottles of vodka and black out "almost every time she drinks."  Tr. 202.  Plaintiff also reported she could not prepare her own meals, dust, or do things for herself generally, but her daughter reported Plaintiff prepares complete meals with several courses daily, does laundry, dusts, and sometimes does dishes.  Tr. 21, 107.  In addition, on June 10, 2003, James N. Butcher, Ph.D., examining psychiatrist, reported Plaintiff's MMPI-2 was invalid because she "answered an unusually large number of extreme items in the deviant direction."  Tr. 210.  Dr. Butcher concluded "an indiscriminate and exaggerated response pattern is probable.  Individuals who produce such deviant patterns cannot be clearly evaluated by the

11 -   OPINION AND ORDER

resulting profile."  Tr. 210.

On this record, the Court concludes the ALJ did not err when he rejected Plaintiff's testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**II. The ALJ did not err in his assessment of the opinions of Plaintiff's treating, examining, and nonexamining physicians.**

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Id.* at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the

12 -   OPINION AND ORDER

nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

  **A. Dr. Shellman**.

  On September 25, 2003, Dr. Shellman conducted a mental-status examination of Plaintiff.  Tr. 232-36.  During the examination, Plaintiff reported, among other things, that she had attempted suicide approximately 20 times in her life, she had a "serious alcohol abuse problem," she experiences auditory hallucinations, and she believes various unknown people want to harm her.  Tr. 233-35.  Dr. Shellman diagnosed Plaintiff with a major depressive disorder; post-traumatic stress disorder; alcohol abuse; and "sedative, hypnotic, or angiolytic abuse."  Tr. 236.  Dr. Shellman assigned Plaintiff a GAF of 45,[3] which indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).

  The ALJ rejected the opinion of Dr. Shellman on the

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994)(*DSM-IV*) at 30-32.

13 - OPINION AND ORDER

ground that his opinion was based substantially on Plaintiff's self-report. As noted, the ALJ properly found Plaintiff not to be credible. In addition, the ALJ found Plaintiff's reports to Dr. Shellman were unsupported by the record. For example, although Plaintiff reported auditory hallucinations and persecutory delusions, the record does not indicate Plaintiff experienced either of these after she discontinued her alcohol binges. Tr. 19. The ALJ also noted it "strained credibility" that Plaintiff had not undergone counseling before or after her June 2003 suicide attempt even though she reported to Dr. Shellman that she had attempted suicide approximately 20 times. Tr. 19.

Based on this record, the Court concludes the ALJ did not err when he rejected Dr. Shellman's September 25, 2003, opinion because he provided legally sufficient reasons based on substantial evidence in the record for doing so.

**B.   Dr. Kosek**.

Plaintiff contends the ALJ erred when he rejected the opinion of Dr. Kosek, treating physician. On February 9, 2005, Dr. Kosek opined Plaintiff was able to sustain part-time sedentary work based on Plaintiff's self-reports of pain. Tr. 356-57. The ALJ gave Dr. Kosek's opinion limited weight because he relied on Plaintiff's self-reports of pain, which, as noted, the ALJ properly did not credit. Tr. 21. The ALJ also

14 -   OPINION AND ORDER

noted Plaintiff was not honest in her reports to Dr. Kosek because she denied any history of alcohol or drug use, which, if known, might have caused Dr. Kosek to "change his opinions or discontinue his unquestioning prescriptions of methadone." Tr. 22.

Based on this record, the Court concludes the ALJ did not err when he rejected Dr. Kosek's February 9, 2005, opinion because he provided legally sufficient reasons based on substantial evidence in the record for doing so.

**C.   Opinions of DDS doctors.**

Plaintiff contends the ALJ erred when he did not address the opinions of nonexamining physicians Sharon Eder, M.D., and Mary Ann Westfall, M.D., that Plaintiff is limited in "reaching in all directions (including overhead)." Tr. 294. Drs. Eder and Westfall also indicated Plaintiff is "limited to occasional OH reach bilaterally." Tr. 294.

Although the ALJ did not specifically address the opinions of Drs. Eder and Westfall as to Plaintiff's reaching limitations, the ALJ incorporated their opinions in his RFC by finding Plaintiff was limited in reaching overhead "to an occasional basis."

The Court, therefore, concludes on this record that the ALJ did not err by failing to address specifically the opinions

15 -   OPINION AND ORDER

of Drs. Eder and Westfall because the ALJ incorporated their conclusions as to Plaintiff's overhead-reaching limitation in his RFC assessment of Plaintiff.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 4th day of September, 2008.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

16 - OPINION AND ORDER